In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

MICHAEL TAYLOR, ) No. ED109142
 )
 Appellant, ) Appeal from the Circuit Court
 ) of the City of St. Louis
vs. )
 ) Honorable Christopher E. McGraugh
THE BOARD OF TRUSTEES OF THE )
FIREFIGHTERS’ RETIREMENT PLAN OF )
ST. LOUIS, )
 )
 Respondent. ) FILED: July 20, 2021

 Michael Taylor appeals the judgment of the circuit court affirming the decision of the

Board of Trustees of the Firefighters’ Retirement Plan of St. Louis (the “Board”) denying his claim

for disability benefits. Taylor argues the Board erred in denying his claim because (1) it found

that mental disabilities are not compensable under section 4.19.070 of the Revised Code of the

City of St. Louis;1 (2) the Board’s decision was not supported by substantial and competent

evidence in light of evidence from Taylor’s doctors and therapist; and (3) the Board’s findings that

he was malingering and unmotivated to work were against the overwhelming weight of the

evidence. We affirm.

1
 All section references are to the Revised Code of the City of St. Louis (2017), unless otherwise indicated.
 Factual and Procedural Background

 Taylor worked as a firefighter for the City of St. Louis for over ten years. In April 2017,

he responded to the scene of a fire and was injured when falling bricks knocked him to the ground.

On August 20, 2018, he filed an application for disability retirement benefits with the Firefighters’

Retirement Plan. In his application, Taylor stated: “A [three] story brick wall collapsed on me,

and rendered me unconscious.” He described the parts of his body injured as his “head, neck,

nerves in cervical, left arm, right foot, right ankle, left foot, left ankle, [and] left knee.” Taylor

claimed he was disabled from engaging in any gainful employment in any occupation. His

application did not reference any psychiatric conditions. Taylor subsequently amended his claim

to reflect that he was only unable to work as a firefighter.

 Summary of Taylor’s Medical Records

 On the day of the incident, Taylor was transported to the emergency room at St. Louis

University Hospital, where he was treated for various physical injuries. After being released from

the emergency room, he received further treatment from Dr. James Doll, a physiatrist. Taylor first

saw Dr. Doll on May 31, 2017 and reported his symptoms as insomnia, frequent headaches,

numbness and tingling in his right arm, joint pain, and swelling of his joints and limbs. Dr. Doll

treated Taylor for cervical and right shoulder strain and prescribed physical therapy and work

conditioning beginning in June 2017. During work conditioning, Taylor had the ability to perform

all necessary tasks with no difficulty. When Dr. Doll mentioned Taylor returning to work, Taylor

stated “there was no way he could possibly perform the requirements of his work activities.” Dr.

Doll reported that Taylor progressed “extremely slowly” in the work conditioning program. He

also found Taylor’s “level of motivation [to be] questionable” and noted inconsistencies between

Taylor’s “self-assessments, his subjective complaints, his physical examination findings and his

 2
actual performance during his work conditioning sessions.” On June 3, 2018, Dr. Doll found that

Taylor had reached maximum medical improvement and did not need restrictions on his physical

activities as a result of his cervical and shoulder injuries. He opined that Taylor had suffered no

permanent partial disability as a result of his injuries. Taylor saw Dr. Doll a final time on July 19,

2018 and reported his symptoms as numbness and weakness. Dr. Doll also noted that Taylor

complained of tremoring, limited range of motion and ongoing pain. Dr. Doll again concluded

Taylor was at maximum medical improvement and that he did not need any further medical

treatment.

 Dr. John Krause, an orthopedic surgeon who treated Taylor from May 5, 2017 to March

19, 2018, noted that Taylor presented signs of symptom magnification. On September 8, 2017,

Dr. Krause opined that it was “somewhat predictable that he is not going to get back to being able

to work as a firefighter” based on his effort at physical therapy and demeanor in the office. Dr.

Krause also reported that Taylor claimed to have suffered a knee injury during physical therapy.

The physical therapist’s report, however, stated that Taylor never suffered an injury during

physical therapy and Dr. Krause himself found no objective abnormal findings. Dr. Krause opined

that Taylor was at maximum medical improvement and returned him to full duty with no

restrictions.

 Taylor also saw Dr. David Peeples, a neurologist, for evaluation and treatment. During a

visit on June 13, 2017, Taylor stated he ruminates about the incident and “freaks out if he sees

bricks.” Dr. Peeples noted “symptoms of posttraumatic stress” and recommended counseling.

Two months later, Taylor sent Dr. Peeples an email requesting a referral to a therapist. Dr. Peeples

saw Taylor again on August 9, 2017, and Taylor indicated he was suffering from a “degree of

 3
posttraumatic stress,” but Dr. Peeples never diagnosed Taylor with post-traumatic stress disorder

(“PTSD”). Dr. Peeples released Taylor from his care without imposing any work restrictions.

 On September 25, 2017, Taylor was evaluated by Dr. Robert Fucetola, the chief of clinical

neuropsychology at Washington University School of Medicine. Dr. Fucetola opined that Taylor

did not exhibit any “serious psychological pathology,” noting that Taylor denied “clinically

significant symptoms of depression, anxiety, or stress/worry.” He concluded Taylor’s “symptoms

did not meet [the] threshold criteria for [PTSD] as there were no clinically significant symptoms

of anxious arousal, dissociative symptoms, or significant depression and anger.” He also found

“no evidence of a major mental disorder” but did diagnose Taylor with “Adjustment Disorder with

Anxiety.” Dr. Fucetola concluded Taylor was not permanently psychologically disabled, noting

that “[a]djustment disorders resolve spontaneously or respond well to treatment, and are not

typically associated with permanent psychological problems by definition.” Dr. Fucetola

recommended ten counseling sessions.

 Taylor attended 40 counseling sessions with Craig Politte, a licensed professional

counselor, between October 16, 2017 and September 5, 2018. Mr. Politte’s notes indicated a

significant number of Taylor’s sessions were devoted to discussions about his anger with his

workers’ compensation doctors and his anger and distrust of the fire department and its employees.

Although he is not a medical doctor, Mr. Politte suggested in his notes and correspondence that

Taylor was suffering from PTSD.

 On February 9, 2018, Dr. Stacey Smith, a psychiatrist, performed an independent

psychiatric evaluation on Taylor. During the evaluation, Taylor refused to consider psychiatric

medications and further advised Dr. Smith there was only a “50-50” chance he would return to full

duty, emphasizing he would be turning 60 the following month. Dr. Smith opined the prognosis

 4
for Taylor returning to work was low and that his “heart is not in it.” Dr. Smith diagnosed Taylor

with “Adjustment Disorder Unspecified, causally related to [his] work injury.”

 Taylor had several visits with Dr. Smith, who ultimately concluded he would “not be

returning to full duty.” On June 25, 2018, Dr. Smith found Taylor had reached maximum medical

improvement. At that visit, Taylor expressed frustration with the fire department and his workers’

compensation doctors. Dr. Smith found that “[p]sychiatrically, [Taylor] can continue working

desk duty. A job change away from the Fire Department is recommended.” She further found

that “[h]is interests would be best served by closing his [workers’ compensation] case. He can

then pursue treatment (or not...) according to his own wishes. Prolonging his treatment within

[workers’ compensation] would be psychologically counter-therapeutic at this point.”

 In a report dated August 9, 2018, Dr. Smith explained her treatment goals were based on

her hope that Taylor “would see some physician treating his physical complaints who would

reassure him (or explain to him his problems in such a way that pleased/satisfied him) but

[Taylor]…might be able to emotionally reconstitute fully post-injury.” She concluded Taylor

“would be a risk to himself and possibly to other firefighters” because of his current state of mind.

On August 23, 2018, Dr. Smith reported she and Mr. Politte were in agreement to “put [Taylor]

off-work permanently.” At no time did Dr. Smith diagnose Taylor with a permanent physical

disability or PTSD.

 On March 23, 2018, Taylor was evaluated by Dr. Richard Katz, a professor of clinical

physical medicine and rehabilitation at Washington University School of Medicine. Dr. Katz

concluded there was a strong psychological component to Taylor’s ongoing distress but declined

to make a diagnosis and deferred to Dr. Smith.

 5
 On October 24, 2018, Dr. Thomas Kibby, a physician for the Board, reviewed Taylor’s

medical records and agreed that Taylor had reached maximum medical improvement and was

suffering from “Adjustment Disorder with Anxiety.” He concluded Taylor was permanently

unable to work as a firefighter but could work in other employment.

 Proceedings Before the Board

 The Board denied Taylor’s claim at an informal hearing on January 31, 2019, concluding:

(1) Taylor’s failure to return to work was caused by his “unwillingness to return to work” as shown

by his lack of effort in physical therapy; and (2) based on the opinion of Dr. Fucetola, Taylor was

“not suffering from any permanent psychological disability.”

 Taylor appealed and requested an evidentiary hearing. He testified that PTSD, not his

physical injuries, was preventing him from returning to work as a firefighter, noting that he had

thought about the incident “24 hours a day, 7 days a week” since the day it happened. He stated

his doctors never prescribed any psychiatric medications because he “didn’t need it” and that it

was “probably true” he told Dr. Smith he did not want to take any psychiatric medications. Taylor

testified he was working as a stationary engineer trainee for the City of St. Louis at a water

purification facility and that his PTSD symptoms were not preventing him from performing that

job. He reported he was not currently experiencing nightmares or flashbacks regarding the incident

and that counseling helped him with those issues. He explained the only symptom of PTSD he

was currently experiencing was that he had been “thinking about” the incident. Taylor

acknowledged he had not received any other counseling since he last saw Mr. Politte in September

2018.

 The Board found Taylor’s testimony regarding “the extent of his claimed inability to

continue his employment as a firefighter due to PTSD was not credible or worthy of belief.” The

 6
Board concluded Taylor had never been credibly diagnosed with PTSD, noting that Dr. Fucetola,

Dr. Smith, and Dr. Kibby all agreed that Taylor was suffering from adjustment disorder with

anxiety, that Dr. Katz deferred to Dr. Smith without making a diagnosis and that Dr. Peeples noted

symptoms of PTSD but did not diagnose Taylor as having that condition.

 The Board found Dr. Smith’s opinion that Taylor could not return to work as a firefighter

was not credible because she did not articulate a medical basis for that conclusion. The Board

stressed that although Dr. Smith concluded Taylor “would be a risk to himself and possibly to

other firefighters based on his current state of mind and beliefs,” she did not connect that

conclusion to Taylor’s diagnosis of adjustment disorder with anxiety. The Board found Dr.

Kibby’s opinion that Taylor was permanently unable to return to work as a firefighter to not be

credible since he did not personally examine him and only reviewed the records of other medical

professionals.

 The Board found the physicians’ conclusion that Taylor was suffering from adjustment

disorder with anxiety to be credible. The Board also credited and gave weight to Dr. Fucetola’s

opinion that adjustment disorder is not associated with permanent psychological problems by

definition.

 The Board denied Taylor’s claim for benefits, concluding he had failed to establish by a

preponderance of the evidence that: (1) he incurred a total and permanent disability; (2) his health

condition “resulted from bodily injury”; and (3) his health condition rendered him totally and

permanently disabled from working as a firefighter. Taylor filed a petition for administrative

review, and the circuit court affirmed the Board’s decision. This appeal follows.

 7
 Standard of Review

 “On an appeal from a judgment of a trial court addressing the decision of an administrative

agency, we review the decision of the administrative agency and not the judgment of the trial

court.” Sanders v. Firemen’s Ret. Sys. of St. Louis, 393 S.W.3d 135, 137 (Mo. App. E.D. 2013).

“According to Article V, Section 18 of the Missouri Constitution, we must determine whether the

agency’s findings are supported by competent and substantial evidence on the record as a whole;

whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or

whether the decision is unauthorized by law.” Id. “A court reviewing the actions of an

administrative agency should make a single determination whether, considering the whole record,

there is sufficient competent and substantial evidence to support the award.” Id. “This standard

would not be met in the rare case when the [agency’s decision] is contrary to the overwhelming

weight of the evidence.” Lagud v. Kansas City Bd. of Police Comm’rs, 136 S.W.3d 786, 791 (Mo.

banc 2004) (alteration in original) (quoting Hampton v. Big Boy Steel Erection, 121 S.W.3d 220,

223 (Mo. banc 2003)). If the “ruling is supported by competent and substantial evidence upon the

whole record the ruling will be affirmed, even though the evidence would also have supported a

contrary determination.” Sanders, 393 S.W.3d at 137.

 “Though we consider the entire record to determine whether the decision is supported by

competent and substantial evidence, we may not substitute our judgment on the evidence for that

of the agency, and we must defer to the agency’s determinations on the weight of the evidence and

the credibility of witnesses.” Id. “We must look to the whole record in reviewing the [agency’s]

decision, not merely at that evidence that supports its decision, and we no longer view the evidence

in the light most favorable to the agency’s decision.” Id. “When an administrative agency decision

 8
is based on the agency’s interpretation and application of the law, we review the administrative

agency’s conclusions of law . . . de novo.” Id.

 Discussion

 We begin our analysis by addressing Taylor’s second and third points relied on, which both

assert the Board’s decision was “unsupported by competent and substantial evidence upon the

whole record.” In Point II, Taylor argues the Board “erroneously credited” Dr. Fucetola’s opinion

over the opinions of Dr. Smith, Dr. Kibby and therapist Craig Politte, all of whom concluded

Taylor was permanently unable to work as a firefighter due to a mental disability.

 The opinions of Dr. Smith, Dr. Kibby and Mr. Politte were based on Taylor’s

representations as to his condition. As noted, the Board explicitly found Taylor lacked credibility

regarding the extent of his claimed inability to return to work as a firefighter due to PTSD. We

are bound by the Board’s credibility determinations. See id. at 139. The Board’s credibility

determination as to Taylor eliminates the bases for the opinions of Dr. Smith, Dr. Kibby and Mr.

Politte. See Dunn v. Treasurer of Mo. as Custodian of Second Inj. Fund, 272 S.W.3d 267, 274

(Mo. App. E.D. 2008). Therefore, Taylor’s argument fails.

 In Point III, Taylor asserts the Board erred because its finding that he was “malingering

and unmotivated to work [was] contrary to the overwhelming weight of the evidence.” Again, the

Board found Taylor’s testimony about “the extent of his claimed inability to continue his

employment as a firefighter due to PTSD was not credible or worthy of belief.” The Board stressed

that the only symptom of PTSD Taylor “claimed to currently be experiencing was that he was

‘thinking about’ the incident” and that he had “refused to consider psychiatric medications.” The

Board also pointed out that Taylor told Dr. Smith there was only a “50-50” chance he would return

to full duty and emphasized to her he would be turning 60 the following month. Additionally, the

 9
Board noted that, despite the fact that Taylor “had demonstrated the ability to perform all necessary

tasks with no difficulty,” he insisted there was no way he could perform his work requirements

when Dr. Doll mentioned returning to work. Again, Dr. Doll concluded Taylor’s “level of

motivation is questionable” and noted further inconsistencies between Taylor’s “self-assessments,

his subjective complaints, his physical examination findings, and his actual performance during

his work conditioning sessions.” And Dr. Krause also reported symptom magnification and that

Taylor had claimed a knee injury that his physical therapist and Dr. Krause’s own evaluation

indicated did not happen.

 Viewing the record as a whole, we conclude the Board’s decision was supported by

competent and substantial evidence. Points II and III are denied.

 We now turn to Taylor’s first point relied on. He contends the Board erred in denying his

claim on the basis that mental disabilities are not compensable under section 4.19.070. We

disagree.

 Section 4.19.070(B)(2), which pertains to “Line of Duty” disability benefits for firefighters,

provides:

 A participant who incurs a termination of employment because of a total and
 permanent disability resulting from bodily injury incurred while engaged in the
 actual performance of duty as a firefighter in response to an emergency call that
 renders the participant totally and permanently unable to continue his employment
 as a firefighter, but not other gainful employment . . . , shall receive a disability
 income while so disabled equal to twenty-five percent of his average final
 compensation . . . .

 According to Taylor, the Board’s “construction of the ordinance is inconsistent with

caselaw” and with section 87.200, RSMo (2016), which provides:

 Upon application by the member or the chief of the fire department, any member
 who has become totally and permanently incapacitated for duty as the natural and
 proximate result of an accident occurring while in the actual performance of duty
 or exposure while in the actual performance of duty in response to an emergency

 10
 call shall be retired by the board of trustees, if the medical board shall certify that
 the member is mentally or physically incapacitated for further performance of duty,
 that such incapacity is likely to be permanent and that the member should be retired.

 Taylor’s argument is premised on the erroneous belief that the Board interpreted the

“resulting from bodily injury” requirement contained in section 4.19.070(B)(2) to exclude mental

disabilities. Contrary to Taylor’s assertion, the Board did not deny his claim on that basis; it

instead found he failed to carry his burden of proof to establish three of the requirements of section

4.19.070(b)(2)—specifically, that (1) he incurred a total and permanent disability, (2) his health

condition “resulted from bodily injury,” and (3) his health condition rendered him totally and

permanently disabled from working as a firefighter.

 But even if the Board’s finding that Taylor’s condition did not result from a bodily injury

could be construed as a determination that mental injuries are not compensable, his claim would

still fail since he did not meet his burden to establish he suffered a termination of employment

because of a total and permanent disability and that he was totally and permanently disabled from

working as a firefighter but not other gainful employment. See section 4.19.070(B)(2). Point I is

denied.

 Conclusion

 For the foregoing reasons, the judgment is affirmed.

 _______________________________
 MICHAEL E. GARDNER, Judge

Gary M. Gaertner, Jr., P.J., concurs.
Philip M. Hess, J., concurs.

 11